UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-50033 |
| | ) | |
| Plaintiff, | ) | |
| | ) | REPORT AND |
| vs. | ) | RECOMMENDATION ON |
| | ) | DEFENDANT'S MOTION TO |
| ANGELO PEREZ, | ) | SUPPRESS [DOCKET 30] |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the court pursuant to an indictment charging defendant Angelo Perez with aggravated sexual abuse and sexual abuse. Mr. Perez moves the court to suppress statements made during two interviews with a federal law enforcement agent on the ground that his statements were taken in violation of <u>Miranda</u>[1] and of his Sixth Amendment right to counsel. [Dockets 30, 31, 42].

The government resists Mr. Perez's motion.  Mr. Perez's motion to suppress was referred to this magistrate judge for a report and recommendation pursuant to Chief Judge Karen E. Schreier's standing order dated June 11, 2007, and 28 U.S.C. § 636(b)(1)(B).

------------------------

[1]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

**FACTS**

An evidentiary hearing on Mr. Perez's motion was held on Tuesday, October 7, 2008.  Mr. Perez and his attorney, Assistant Federal Public Defender George Grassby, were present as was the attorney for the government, Assistant United States Attorney Mark Vargo.  One witness testified in person at the hearing:  Special Agent Charles Cresalia of the Federal Bureau of Investigation ("FBI").  The court finds the following facts from the evidence presented at the hearing.

Agent Cresalia has been an FBI agent for approximately 20 years.  On January 11, 2008, he traveled to the jail at Pine Ridge to interview Mr. Perez regarding allegations that he had sexually assaulted a female.  Agent Cresalia had had contact with the tribal prosecutor for the Oglala Sioux Tribe prior to his interview with Mr. Perez.  The tribal prosecutor had informed Agent Cresalia that on January 3, 2008, Mr. Perez had entered a plea of guilty to tribal charges arising out of the same conduct which now forms the basis of the federal indictment and that Mr. Perez had been serving out his sentence on that conviction at the Pine Ridge jail since January 3.  Prior to the interview with Mr. Perez, Agent Cresalia had also ascertained that Mr. Perez had a previous conviction for assault in the state courts of Nebraska in 2003.

When Agent Cresalia arrived at the Pine Ridge jail on January 11, 2008, at approximately 3:30 p.m., he had search warrants for the collection of a

2

buccal swab and pubic hair samples from Mr. Perez.  He and two corrections officers from the jail executed these search warrants on Mr. Perez in a conference room at the jail.  The corrections officers left after the execution of the search warrants.

Agent Cresalia introduced himself to Mr. Perez and told him that he was with the "FBI."  Agent Cresalia also showed Mr. Perez his FBI credentials. Agent Cresalia explained that he was a federal investigator like a Bureau of Indian Affairs agent.  Mr. Perez indicated that he understood.  Agent Cresalia told Mr. Perez that he was there to interview Mr. Perez regarding the sexual assault allegations.

Mr. Perez indicated that he was aware of those allegations and volunteered information about the corresponding tribal charges arising out of the same incident.  Agent Cresalia testified that he asked Mr. Perez if he had been represented on the tribal charges.  Mr. Perez indicated that Brandon Ferguson had represented him.  Agent Cresalia testified that he knew Brandon Ferguson and that Mr. Ferguson was not a lawyer admitted to practice law. Lay persons without legal training or licensure are allowed to represent criminal defendants in Oglala Sioux Tribal Courts.

Agent Cresalia produced an "Advice of Rights" form and asked Mr. Perez to read the form out loud.  Mr. Perez did so without any difficulty reading and without making any mistakes.

3

The form contained the following advisement of rights:

Before we ask you any questions, you must understand your
rights.
You have the right to remain silent.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you
any questions.
You have the right to have a lawyer with you during questioning.
If you cannot afford a lawyer, one will be appointed for you before
any questioning if you wish.
If you decide to answer questions now without a lawyer present,
you have the right to stop answering at any time.

WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my
rights are.  At this time, I am willing to answer questions without a
lawyer present.

<u>See</u> Exhibit 1.

Both Agent Cresalia and Mr. Perez signed the advice of rights form after

Mr. Perez read it aloud.  <u>Id.</u>  Mr. Perez indicated that he would waive his rights

and speak to Agent Cresalia.  Mr. Perez then proceeded to give a statement.

At the conclusion of the statement, Agent Cresalia asked Mr. Perez if he

would agree to repeat his statement in summary fashion so that Agent Cresalia

could make an audio recording of the statement.  Mr. Perez said no.  Mr. Perez

similarly declined Agent Cresalia's request to make a hand-written statement of

what he had told Agent Cresalia orally.  The interview was concluded at

approximately 4:15 p.m., 45 minutes after Agent Cresalia's first contact with

Mr. Perez.

4

Agent Cresalia was not armed during this interview.  He was dressed casually in a long-sleeved shirt and some type of jacket.  After the execution of the search warrants and during the interview, Agent Cresalia was the only law enforcement officer in the room with Mr. Perez.

At no time during Mr. Perez's interactions with Agent Cresalia did Agent Cresalia observe any outward indication that Mr. Perez was under the influence of alcohol or drugs, that he was tired or sleep-deprived, or that he was "out of it" in any way.  Agent Cresalia described Mr. Perez as having adequate intelligence.  Agent Cresalia testified that, on January 11, 2008, he had no doubt that Mr. Perez understood his rights and voluntarily and intelligently agreed to waive those rights.

Mr. Perez was 28 or 29 years old at the time of the interview.  Mr. Perez did tell Agent Cresalia that Mr. Perez's brother had hit him in the head with a hammer in the past and that the injury had caused Mr. Perez to suffer some short-term memory loss.  However, Agent Cresalia observed no indications that Mr. Perez was suffering from any short-term memory loss during the January 11 interview.  Mr. Perez never had any trouble understanding or remembering Agent Cresalia's questions during the interview and remained cooperative throughout the interview.

Agent Cresalia did not specifically advise Mr. Perez that he faced potential felony charges in federal court.  Likewise, Agent Cresalia did not tell

5

Mr. Perez  what the potential sentencing consequences of any federal charges might be.

On May 7, 2008, Agent Cresalia again had contact with Mr. Perez for the purpose of executing a federal arrest warrant on him on the instant indictment. At that time, Agent Cresalia read Mr. Perez his <u>Miranda</u> warnings.  Mr. Perez indicated that he did not want to waive his rights and no interrogation took place.  Mr. Perez made no statements on this occasion other than to request that Agent Cresalia contact a couple of people for him to let them know that Mr. Perez was being taken to Rapid City.

## DISCUSSION

**A.    January 11, 2008, Interview**

Mr. Perez moves to suppress statements made to Agent Cresalia during the January 11, 2008, interview at the tribal jail on the ground that the statements were taken in violation of the protections afforded by <u>Miranda</u>. Mr. Perez argues that Agent Cresalia provided incomplete and inaccurate <u>Miranda</u> warnings by failing to advise Mr. Perez that he could face federal charges.  Mr. Perez also argues that the waiver of his <u>Miranda</u> rights was not knowing, intelligent, or voluntary because of the following factors:  he did not understand that his statements could subject him to federal charges; he was not "well educated in legal matters"; he was not accompanied by counsel; he was not tested for the presence of narcotics in his system; and he was "young,

in jail, and not legally sophisticated."[2]  After the evidentiary hearing in this

case, Mr. Perez filed a supplemental brief arguing that Agent Cresalia violated

his Sixth Amendment rights when he interviewed Mr. Perez on January 11

without his lay advocate on the tribal charges present.

The government resists Mr. Perez's motion to suppress his January 11,

2008, statements, arguing that Agent Cresalia did not violate Mr. Perez's

Miranda rights.  See Docket 39.  The government does not dispute that this

interview took place while Mr. Perez was in custody and that Agent Cresalia

initiated the questioning.  Id.  Thus, the government recognizes that, because

Mr. Perez was subject to custodial interrogation, Agent Cresalia was required to

provide Miranda warnings to Mr. Perez and to secure Mr. Perez's waiver prior to

questioning.[3]  However, the government maintains that the Miranada warnings

given by Agent Cresalia were complete and accurate because he was not

_____

[2]The court notes that Mr. Perez does not argue that his statement was
involuntary, that is, that it was "extracted by threats, violence, or express or
implied promises sufficient to overbear the defendant's will and critically impair
his capacity for self-determination."  United States v. LeBrun, 363 F.3d 715,
724 (8th Cir. 2004) (rehearing en banc) (quoting Simmons v. Bowersox, 235
F.3d 1124, 1132 (8th Cir. 2001)).  As there is no evidence of such conduct on
the part of Agent Cresalia and as Mr. Perez does not raise this issue, the court
will not address it in this discussion.

[3]A Miranda warning is required prior to questioning whenever two
conditions are present:  (1) the suspect is being interrogated and (2) the
suspect is in custody.  Unites States v. Flores-Sandoval, 474 F.3d 1142, 1146
(8th Cir. 2007).  The government does not take issue with the fact that Mr. Perez
was both in custody and being interrogated by Agent Cresalia on January 11.

required to advise Mr. Perez of the possibility of federal charges or the potential penalties for any federal charges.  The government asserts that Mr. Perez understood his <u>Miranda</u> rights and validly waived his rights prior to questioning.  The government also argues that Agent Cresalia did not violate Mr. Perez's Sixth Amendment rights when he interviewed him without his tribal representative present.

      **1.**      **Whether the <u>Miranda</u> Advisement was Complete and Accurate**

The holding in <u>Miranda</u> "is that an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning."  <u>United States v. Griffin</u>, 922 F.2d 1343, 1347 (8th Cir. 1990) (citing <u>Miranda</u>, 384 U.S. at 444).  <u>Miranda</u> warnings protect an individual's Fifth Amendment privilege against self-incrimination by "ensuring that a suspect knows that he may chose not to talk to law enforcement, to talk only with counsel present, or to discontinue talking at any time."  <u>Colorado v. Spring</u>, 479 U.S. 564, 574 (1987).

Mr. Perez argues that the advisement of <u>Miranda</u> warnings was inaccurate and incomplete because Agent Cresalia did not specifically advise him that he faced potential federal charges.  Mr. Perez has not favored the court with a single citation to a single case that supports the proposition that <u>Miranda</u>, or the Fifth Amendment on which <u>Miranda</u> is premised, requires

police to tell suspects of the particular charges they may face or the penalties they may face in the event of conviction.

The Eighth Circuit has rejected the argument "that <u>Miranda</u> requires a specific warning on the potential sentencing consequences of waiving the right to remain silent." <u>United States v. Johnson</u>, 47 F.3d 272, 277 (8th Cir. 1995). The <u>Miranda</u> Court required that, prior to custodial interrogation, a suspect must be advised "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." <u>Miranda</u>, 384 U.S. at 445. "[T]here are no magic words that automatically satisfy <u>Miranda</u>'s constitutional concerns. Instead, the appropriate inquiry is whether the warning that [defendant] received reasonably conveyed his constitutional rights as required by <u>Miranda</u>." <u>Thai v. Mapes</u>, 412 F.3d 970, 977 (8th Cir. 2005) (citations omitted). Because the <u>Miranda</u> Court "did not prescribe an exact format or postulate the precise language that must be used in advising a suspect of his constitutional right to remain silent..., the substance and not the form of the warnings should be of primary importance." <u>Tucker v. United States</u>, 375 F.2d 363, 369 (8th Cir. 1967).

The advisement of rights given in this case encompassed everything required by <u>Miranda</u>. Agent Cresalia was not under any legal obligation to tell Mr. Perez that federal charges may be filed or to inform Mr. Perez of the

possible penalties for those charges.  The court notes, further, that the reason for the rule that interrogators do not have to tell suspects of the charges they are going to be facing and the exact penalties for those charges is easily understood:  until the investigation is complete, it is nearly impossible for police in Agent Cresalia's position to determine what federal charges, if any, are supported by the evidence and what penalties could result, especially in view of the fact that the <u>Miranda</u> advisement takes place *before* the defendant makes a statement to police.  The court concludes that Agent Cresalia accurately and adequately advised Mr. Perez of his rights prior to questioning.

### 2.   Whether Mr. Perez's <u>Miranda</u> Waiver Was Valid

Mr. Perez argues that the waiver of his <u>Miranda</u> rights was not voluntary, knowing, or intelligent.  Whether Mr. Perez's statements should be suppressed pursuant to the rule in <u>Miranda</u> depends on whether he effectuated a valid waiver of his <u>Miranda</u> rights prior to making statements to Agent Cresalia.

It is the government's burden to prove that Mr. Perez's waiver was voluntary, knowing, and intelligent.  <u>United States v. Caldwell</u>, 954 F.2d 496, 508 (8th Cir. 1992).  "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." <u>Miranda</u>, 384 U.S. at 475.  The government must prove that a waiver was

voluntary, knowing, and intelligent by a preponderance of the evidence.

Colorado v. Connelly, 479 U.S. 157, 168 (1986).

Whether Mr. Perez effectively waived his Miranda rights requires two

inquiries:

> First, the relinquishment of the right must have been voluntary in
> the sense that it was the product of a free and deliberate choice
> rather than intimidation, coercion, or deception.  Second, the
> waiver must have been made with a full awareness of both the
> nature of the right being abandoned and the consequences of the
> decision to abandon it.

United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994) (quoting Moran v.

Burbine, 475 U.S. 412, 421 (1986)).

"Only if the 'totality of circumstances surrounding the interrogation'

reveals both an uncoerced choice and the requisite level of comprehension may

a court properly conclude that the Miranda rights have been waived."  Jones,

23 F.3d at 1313.  Examination of the totality of circumstances includes, but is

not limited to, such considerations as the "background, experience, and

conduct" of the defendant.  Jones, 23 F.3d at 1313 (quoting United States v.

Barahona, 990 F.2d 412, 418 (8th Cir. 1993)).

### a.      Whether Mr. Perez's Waiver was Voluntary

With regard to the inquiry of voluntariness, "[i]n considering whether a

confession was voluntary, the determinative question is whether the confession

was extracted by threats, violence, or promises (express or implied), such that

the defendant's will was overborne and his or her capacity for self-

determination was critically impaired." <u>United States v. Pierce</u>, 152 F.3d 808, 812 (8th Cir. 1998).  "Absent evidence that [defendant's] will [was] overborne and his capacity for self-determination critically impaired *because of* coercive police conduct," a waiver of <u>Miranda</u> rights will be considered voluntary. <u>Spring</u>, 479 U.S. at 574 (emphasis supplied). The same analysis applies to determining whether a defendant's confession under the Fifth Amendment or <u>Miranda</u> waiver were voluntary.  See <u>United States v. Makes Room For Them</u>, 49 F.3d 410, 415 (8th Cir. 1995) (a court must consider the conduct of the police when determining whether defendant's will was overborne with regard to either his confession or his <u>Miranda</u> waiver).

The court must look to the totality of the circumstances, "including the conduct of the law enforcement officials and the defendant's capacity to resist any pressure." <u>Id.</u>  "Coercive official activity is a necessary predicate to a finding that a statement is not voluntary. The fifth amendment privilege against self-incrimination is not concerned with other types of psychological pressures. An incriminating statement is not involuntary unless extorted from the accused by means of coercive activity." <u>United States v. Goudreau</u>, 854 F.2d 1097, 1099 (8th Cir. 1988) (citations omitted).

The Supreme Court has indicated that the physical and mental state of the defendant is relevant to the inquiry as to what constitutes "coercion." <u>See</u> <u>Spring</u>, 479 U.S. 564.  Under the totality of circumstances test, the defendant's

characteristics are relevant to the extent that the police knew or should have known of those characteristics and deliberately exploited them.  See Blackburn v. Alabama, 361 U.S. 199 (1960).  In other words, although police coercion is *required* before a statement can be found involuntary, the defendant's mental status is considered in deciding *whether* police coercion existed.  See Connelly, 479 U.S. at 164 ("as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus.  But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' ")

In Spring, the defendant had been told that police wanted to interrogate him about some firearms offenses.  Spring,479 U.S. at 566-567.  The police advised the defendant of his Miranda rights, which he waived.  Id.  During the course of the interrogation, the police questioned the defendant about his involvement in a murder.  Id. at 567.  The defendant later argued that the waiver of his Miranda rights was "compelled" because he was not told at the inception that he would be questioned about the murder.  Id. at 573.  The Court rejected this argument, stating that, "[h]is allegation that the police failed to supply him with certain information does not relate to any of the traditional indicia of coercion:  'the duration and conditions of detention..., the manifest

13

attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance or self-control.' " Id. at 574 (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)); see also United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995) (court held that the defendant's confession was voluntary even if he "was confused and confessed to the crime on the mistaken belief that he had been promised leniency (or even if he had been promised some form of leniency)").

In a similar vein, the Eight Circuit has held that a defendant's "[l]ack of awareness of the potential adverse impact of [his] statements is not sufficient in itself to invalidate a waiver" of Miranda rights. United States v. Peck, 161 F.3d 1171, 1174 (8th Cir. 1998).

In Makes Room for Them, the Eighth Circuit rejected a defendant's argument that both his confession and Miranda waiver were involuntary due to his lower-than-average intelligence. Makes Room for Them, 49 F.3d at 415. The defendant contended that his limited intellectual abilities made him more susceptible to having his will overborne. Id. The court rejected this argument, finding that, "[a]lthough age, education, and experience are factors in the voluntariness analysis, they are not dispositive." Id. The court further stated:

> We may assume for the sake of argument that Makes Room[for Them] had a somewhat diminished capacity to resist pressure to waive his rights and confess. However, this is one of two factors; we must also consider the conduct of the police. We simply do not find the requisite coercive activity here.

14

Id. (internal citations omitted); see also United States v. LeBrun, 363 F.3d 715, 726 (8th Cir. 2004) (rehearing *en banc*) ("Generally, [the court] ha[s] concluded that where the defendant possessed at least average intelligence, then his inculpatory statements were not compelled.") (citing United States v. Gallardo-Marquez, 253 F.3d 1121, 1123-24 (8th Cir. 2001) (concluding confession was voluntary where defendant was of average intelligence and had prior contact with law enforcement); United States v. Astello, 241 F.3d 965, 968 (8th Cir. 2001) (concluding that confession of an eighteen-year-old boy was voluntary where he had completed the eleventh grade and possessed a capacity to understand what was being said during the interview); Simmons v. Bowersox, 235 F.3d 1124, 1134 (8th Cir. 2001) (concluding that confession was voluntary where defendant had full scale I.Q. of 88); cf. Wilson v. Lawrence County, 260 F.3d 946, 949 n.4 (8th Cir. 2001) (finding involuntary confession where defendant was mentally retarded, his overall mental abilities were in the bottom two percent of the population, and testimony revealed that he could be "talked into anything")).

Further, "neither exhaustion nor intoxication will necessarily invalidate a Miranda waiver." United States v. Korn, 138 F.3d 1239, 1240 (8th Cir. 1998). The Eighth Circuit "has declined to adopt a per se rule of involuntariness founded solely on intoxication." United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006). "Instead, 'the test is whether these mental impairments caused the

15

defendant's will to be overborne.' " Id. (citing United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990)); see also Unites States v. Contreras, 372 F.3d 974, 977-78 (8th Cir. 2004) (although defendant had used methamphetamine the evening before and marijuana the day he consented to a Miranda waiver, the court found that the waiver was voluntary because there was no evidence of police coercion and because defendant appeared lucid at the time and understood questions asked of him); United States v. Phillips, 506 F.3d 685, 687 (8th Cir. 2007) (although defendant had ingested four ecstasy pills and alcohol thirty-eight hours before being questioned by police, the court found that (1) his Miranda waiver was voluntary because there was no evidence of police coercion, deception, or intimidation, and (2) his waiver was knowing and intelligent because there was adequate time for any impairment to dissipate and defendant appeared lucid, cooperative, and aware of his rights during the interview).

In this vein, the court notes that no evidence was introduced at the hearing on this motion that would support Mr. Perez's assertion that he might have been intellectually impaired, under the influence of any chemical substance, or sleep-deprived.  Rather, the only evidence that was adduced at the hearing was that Mr. Perez appeared normal and responsive in every way, and that Agent Cresalia failed to submit Mr. Perez to a battery of tests in order to rule these conditions out prior to interviewing him.

16

Again, Mr. Perez has cited not a single legal authority to support the idea that Agent Cresalia was under a duty to perform such comprehensive testing on Mr. Perez prior to interviewing him, particularly where, as here, there was no outward indication that Mr. Perez was impaired in any way.  The court also notes that the fact that Mr. Perez had been continuously incarcerated for at least eight days prior to the interview with Agent Cresalia supports the conclusion that he was not under the influence of any chemical substance, absent facts pointing to a different conclusion.

In considering the totality of the circumstances surrounding the January 11, 2008, interview of Mr. Perez, there is simply no evidence that Agent Cresalia used any coercive tactics to overbear Mr. Perez's will or critically impair his ability for self-determination.  Nor is there any evidence that Mr. Perez had a particular mental or physical infirmity that Agent Cresalia was aware of and exploited during the interview.  The Eighth Circuit has recognized that every interrogation of a suspect contains some element of coercion or pressure to elicit a confession.  See Astello, 241 F.3d at 967.  Examining "traditional indicia of coercion" leads to the conclusion that there were none in this case.  Agent Cresalia provided Mr. Perez with an FBI advice of rights form, which Mr. Perez read and affirmed that he understood his Miranda rights.  Mr. Perez executed a written waiver of his rights.  Agent Cresalia made no threats, physical or psychological, or promises to induce Mr. Perez to waive his Miranda

17

rights and make incriminating statements.  Agent Cresalia did not mislead Mr.
Perez as to the nature of the interview.  Mr. Perez knew, at the start of the
interview, that Agent Cresalia was a federal agent and wanted to discuss the
allegations made by the victim.   Agent Cresalia was the only law enforcement
agent conducting the interview as the two correctional officers present during
the execution of the search warrants had already left the room.  Mr. Perez was
not handcuffed.  The entire interview lasted for only 45 minutes.  Thus, "this is
not a situation where the officers wore down a defendant's will with persistent
questioning over a considerable length of time." LeBrun, 363 F.3d at 726.
Finally, although the interview took place at the tribal jail, this fact alone does
not make the interview so coercive as to vitiate the voluntariness of Mr. Perez's
waiver.  Based on the testimony presented at the suppression hearing, the
court concludes that neither the conduct of Agent Cresalia while questioning
Mr. Perez nor the circumstances and conditions surrounding the questioning,
e.g., the custodial environment, rose to the level of police coercion.

Further, Mr. Perez did not appear to be overly susceptible to police
coercion, even if such coercion had occurred.  Mr. Perez was 28 or 29 years old
at the time of the interview and he had had prior experience with the criminal
justice system by virtue of his 2003 assault conviction in Nebraska state court.
During the interview, Mr. Perez appeared to be mentally sound, cooperative,
capable of understanding Agent Cresalia's questions and responding

18

appropriately, and not suffering from the effects of alcohol or drug use.  There is no evidence that Mr. Perez was under the influence of alcohol or any controlled substance; he had been incarcerated for the preceding eight days.

Although Mr. Perez informed Agent Cresalia that he suffered from short-term memory loss, there is no evidence that these symptoms surfaced during the interview and there is no evidence that this condition diminished Mr. Perez's free will.  Nor is there any evidence that Mr. Perez suffered from any other physical or mental impairment that diminished his free will.  In fact, Mr. Perez was sufficiently clear-headed and assertive to refuse to provide a tape-recorded or hand-written statement.  This fact also shows that Mr. Perez was not so intimidated by either Agent Cresalia or the environment of the interview that he could no longer exercise free choice.  In light of Mr. Perez's sound mental and physical status, the court concludes that he voluntarily waived his Miranda rights and voluntarily made statements to Agent Cresalia during the interview.

### b.    Whether Mr. Perez's Waiver was Knowing and Intelligent

Mr. Perez argues that those same factors that rendered his waiver involuntary also rendered his waiver unintelligent and unknowing.  "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right..." Thai, 412 F.3d at 977.  Although police coercion is a necessary

predicate to finding that a waiver was involuntary, it is *not* determinative on the separate issue of whether the waiver was knowing and intelligent.  United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998).

"As a general matter ... an accused who is admonished with the warnings prescribed by this Court in Miranda has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one..."  United States v. Garlewicz, 493 F.3d 933, 936 (8th Cir. 2007). "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law."  Moran, 475 U.S. at 422-423.

The Court in Miranda explained further:

> At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent. For those unaware of the privilege, the warning is needed simply to make them aware of it– the threshold requirement for an intelligent decision as to its exercise.  More important, such a warning is an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere. ...

> The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of

20

these consequences that there can be any assurance of real
understanding and intelligent exercise of the privilege.

Miranda, 384 U.S. at 467-468, 469.

In Turner, police officers stopped Turner's vehicle after observing erratic

driving. Turner, 157 F.3d at 553. Officers administered field sobriety tests to

Turner and concluded that he was under the influence of some drug other than

alcohol. Id. at 554. After arresting Turner and advising him of his Miranda

rights, officers transported him to jail and conducted a urine test, which came

back positive for phencyclidine (PCP). Id.

Officers again advised Turner of his Miranda rights and Turner signed a

waiver form, initialing each admonition. Id. During the interview, Turner

appeared cooperative; however, he subsequently exhibited bizarre behavior. Id.

Upon examination, several psychiatrists diagnosed Turner with a having a

PCP-induced psychotic disorder and an intelligence quotient ("IQ"), in the low-

average to borderline range. Id. Turner moved to suppress the statements he

made to law enforcement, arguing that, because of his low IQ, PCP

intoxication, and mental illness, he did not have the mental capacity to

intelligently and knowingly waive his constitutional rights. Id.

The court rejected this argument, finding the following facts persuasive:

Turner was cooperative during the interview; he reviewed and initialed each

admonition of the waiver form; he agreed to answer questions; he gave accurate

21

information; and he appeared intelligent enough to understand his rights. Id. at 555; see also North Carolina v. Butler, 441 U.S. 369, 373 (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver..."). The Turner court concluded that Turner's waiver of his Miranda rights was knowing and intelligent. Turner, 157 F.3d at 557.

Mr. Perez's mental and physical status was certainly no worse than that of the defendant in Turner. Like the defendant in Turner, Mr. Perez was cooperative and responsive during the interview with Agent Cresalia and was intelligent enough to remember and recount details of the alleged incident. Further, as stated earlier, the advisement of rights given by Agent Cresalia fully and fairly described Mr. Perez's Miranda rights and did so in plain and simple language. Mr. Perez acknowledged that he understood his rights and agreed, in writing, to waive them. The fact that Agent Cresalia did not warn Mr. Perez that his responses could subject him to federal charges does not vitiate his Miranda waiver. Miranda does not require "a specific warning on the potential sentencing consequences of waiving the right to remain silent." United States v. Johnson, 47 F.3d 272, 277 (8th Cir. 1995). Nor does the Constitution require "that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment." Spring, 479 U.S. at 574; see also United States v. Sanders, 341 F.3d 809, 817 (8th Cir. 2003) (a defendant "must show

more than that he misunderstood the extent of his waiver or its ramifications..."); United States v. Peck, 161 F.3d 1171, 1174 (8th Cir. 1998) ("Lack of awareness of the potential adverse impact of statements is not sufficient in itself to invalidate a waiver of the right to counsel.").  The court finds that Mr. Perez's Miranda waiver was knowing and intelligent.

### 3. Whether Agent Cresalia Violated Mr. Perez's Sixth Amendment Right to Counsel

Mr. Perez also argues that his Sixth Amendment right to counsel was violated by Agent Cresalia interviewing him on January 11, 2008, without his tribal representative present.  The right to counsel arising under the Sixth Amendment is triggered only upon the initiation of formal charges against the defendant.  See Rothgery v. Gillespie County, ___ U.S. ___, 128 S. Ct. 2578, 2583 (2008); McNeil v. Wisconsin, 501 U.S. 171, 177-178 (1991).  "If police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."  Michigan v. Jackson, 475 U.S. 625, 636 (1986).

The rule that a defendant's Sixth Amendment right to counsel does not obtain until formal charges are initiated against him is not "mere formalism," but rather a recognition that, once formal charges are brought, the " 'adverse positions of the government and defendant have solidified,' and the accused 'finds himself faced with the prosecutorial forces of organized society, and

23

immersed in the intricacies of substantive and procedural criminal law.' "
Rothergery, 128 S. Ct. at 2583 (quoting Kirby v. Illinois, 406 U.S. 682, 689
(1984)).  The "accused has the right to depend on counsel to act as a medium
between him and governmental authorities."  United States v. Killeaney, 2007
WL 4459348 at *5 (D.S.D. 2007); Jackson, 475 U.S. at 632; Maine v. Moulton,
474 U.S. 159, 176 (1985).

In this case, the federal government did not initiate formal charges
against Mr. Perez until April 23, 2008.  Thus, Agent Cresalia's January 11,
2008, interview took place before formal charges were in place and, hence,
before Mr. Perez had any Sixth Amendment right to counsel.  However,
Mr. Perez argues that the tribal and federal charges and that the tribal and
federal sovereign are essentially the same, such that his Sixth Amendment
right arose upon being formally charged in *tribal* court.  Thus, since Agent
Cresalia interviewed Mr. Perez after the tribal charges had been initiated,
Mr. Perez asserts a violation of his Sixth Amendment rights.

The Sixth Amendment right to counsel is offense specific.  McNeil, 501
U.S. at 175-176.  Therefore, a defendant who is formally accused in a court
proceeding with rape charges can be questioned by police regarding a factually
and legally unrelated robbery.  Id.  Also, under double jeopardy analysis, the
federal government and the tribal government are two separate  sovereigns.
Heath v. Alabama, 474 U.S. 82, 88 (1985).  The question arises then, when a

24

defendant is charged with separate offenses by tribal government and by the federal government, is this the "same offense" because it arises out of the same facts, or is it a different offense because each offense is being prosecuted by a different sovereign?

The Eighth Circuit has declined to rely solely on double jeopardy analysis in determining whether a defendant's right to counsel under the Sixth Amendment was violated when federal officials interrogate a defendant after the initiation of tribal proceedings. Red Bird, 287 F.3d at 714-715.[4]  Instead, the Eighth Circuit evaluates a number of other factors.

---

[4]There is a split of authority among the circuits as to whether, in cases involving an allegation of a Sixth Amendment violation, the Texas v. Cobb decision incorporates the full panoply of double jeopardy analysis–specifically the dual sovereign analysis–or whether only the Blockburger test applies.  This would be of significance where, for example, state and federal officials charged a defendant with offenses having identical elements.  If the defendant had already appeared in state court and asserted his Sixth Amendment right to counsel, and federal officials subsequently interrogated the defendant before the institution of federal charges with the same essential elements as the state charges, courts disagree on whether this would constitute a Sixth Amendment violation.  See United States v. Coker, 433 F.3d 39, 43 (1st Cir. 2005).  The Second Circuit does not apply the dual sovereign analysis to allegations of Sixth Amendment violations.  United States v. Mills, 412 F.3d 325 (2d Cir. 2005).  The Eighth Circuit is in accord with this approach at least where the other sovereign is an Indian tribe.  See Red Bird, 287 F.3d at 715.  The First and Fifth Circuits apply the dual sovereign analysis to Sixth Amendment violations.  See Coker, 433 F.3d at 43; United States v. Avants, 278 F.3d 510 (5th Cir. 2002).

First, the Eighth Circuit looks to whether the tribal and federal cases charge the same offense by determining whether each offense requires proof of a fact which the other does not.  <u>Red Bird</u>, 287 F.3d at 715 (citing <u>Texas v. Cobb</u>, 532 U.S. 162, 173 (2001) (quoting <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932))).  Then the court looks to whether the defendant had a right to counsel in tribal proceedings, whether the defendant asserted his right to counsel in tribal proceedings, whether the tribal proceedings were adversarial in nature, and whether the federal interrogator was aware of the pending tribal charges.  <u>Red Bird</u>, 287 F.3d at 714-715.  <u>See also</u> <u>United States v. Doherty</u>, 126 F.3d 769, 772 (6th Cir. 1997) (no Sixth Amendment violation occurs where tribal proceeding was nonadversarial).

The burden of proving a Sixth Amendment violation rests with the defendant.  <u>Kuhlman v. Wilson</u>, 477 U.S. 436, 459 (1986); <u>Moore v. United States</u>, 178 F.3d 994, 999 (8th Cir. ), <u>cert. denied</u>, 528 U.S. 943 (1999).  Therefore, a failure by the defendant to introduce evidence from which a Sixth Amendment violation can be established results in denial of the defendant's motion.  <u>Moore</u>, 178 F.3d at 999.

In <u>Red Bird</u>, the court held that the defendant's Sixth Amendment rights were violated where he had previously been arraigned in an adversarial proceeding in tribal court and asserted his right to counsel, which was guaranteed under the Rosebud Sioux Tribal Constitution.  <u>Red Bird</u>, 287 F.3d

26

at 714-716.  Key to the court's holding was the fact that the federal investigators were fully aware of the pending tribal charges and that the federal agents and tribal agents were working together in tandem to investigate and prosecute the defendant.  Id.

In United States v. Plumman, 409 F.3d 919 (8th Cir. 2005), the court held that no Sixth Amendment violation occurred where the record was unclear as to whether the tribal charges were pending at the time of the federal interrogation, where evidence did not establish whether the federal agent or the defendant himself knew of the pending tribal charges, whether tribal charges were even in fact pending, and where pending charges in Children's Court were civil in nature and, thus, no Sixth Amendment right applied to those charges. Id. at 926-927.

Three decisions in the District of South Dakota have addressed this issue and all three have held that lay representation of a defendant in tribal court by one who is not a licensed professional attorney did not constitute "counsel" as encompassed within the protections of the Sixth Amendment.  United States v. Tools, 2008 WL 259524 at * 6-7 (S.D.D. 2008); Killeaney, 2007 WL 4459348 at *5-7; United States v. Dupris, 422 F. Supp. 2d 1061, 1068 (D.S.D. 2006) (holding that Sixth Amendment right of defendant did not attach until defendant was charged in federal court because defendant's appearance in tribal court with lay representation on charges arising out of the same incident

27

was not an appearance with "counsel" as contemplated by the Sixth
Amendment).  The District of Minnesota has also concluded that the assistance
of a lay advocate in tribal court does not trigger the protections of the Sixth
Amendment and, therefore, interrogation of a defendant without his lay
counsel present does not violate a defendant's Sixth Amendment right to
counsel.  See United States v. Whitefeather, 2006 WL 763204 (D. Minn. 2006).

Here, Mr. Perez has failed to prove that his Sixth Amendment rights were
violated.  His representative in tribal court was a lay person who was not a
lawyer admitted to any bar association.  Furthermore, Mr. Perez introduced no
evidence at all as to the elements of the tribal offense and the elements of the
federal offense, or whether he had a right to counsel in tribal court under the
tribal constitution.  For all these reasons, the court concludes that Mr. Perez
did not prove a violation of his right to counsel when Agent Cresalia
interrogated him on January 11, 2008.

**B.      May 7, 2008, Interview**

As Mr. Perez made no incriminating statements to Agent Cresalia during
the May 7, 2008, interview, that the government intends to use in its case-in-
chief, the court need not address the Miranda issue.  Agent Cresalia
immediately ceased any attempt to question Mr. Perez once Mr. Perez indicated
that he did not wish to waive his rights.  Accordingly, there are no statements
to suppress from the May 7, 2008, encounter.

28

## CONCLUSION

Based on the evidence adduced at the hearing, the above findings of fact, and the law, the court recommends that Angelo Perez's motion to suppress [Docket 30] be denied.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require *de novo* review by the district court.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated October 15, 2008.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE